OPINION
{¶ 1} Defendant-Appellant, Nicole Ralston ("Nicole") appeals from the July 1, 2008 Judgment Entry of the Court of Common Pleas, Family Division, of Marion County, Ohio designating Plaintiff-Appellee, Jamie Ralston ("Jamie") as the residential parent of the parties' child for school purposes and modifying the parties' shared parenting plan.
 {¶ 2} Nicole and Jamie were married in November 2000. Kaden Ralston ("Kaden"), the only child born of the marriage was born on October 11, 2002. In February 2005, the parties terminated their marriage, and the trial court issued a decree of shared parenting, providing that "[b]oth parties shall be designated the custodial and residential parent of the minor child during their individual period of parenting time."
 {¶ 3} In February 2008, as Kaden approached school-age, Nicole filed a motion to reallocate parental rights and responsibilities, requesting that she be designated as the residential parent for school placement purposes. Additionally, Nicole requested appointment of a guardian ad litem. Shortly thereafter, Jamie also filed a motion to reallocate parental rights and responsibilities requesting that he be designated as the residential parent for school placement purposes.
 {¶ 4} In June 2008, the family court held a hearing on the matter.
 {¶ 5} Jamie testified that he lives in Marion County and is employed as a Marion police officer. In his employment, Jamie works ten-hour day shifts Friday *Page 3 
through Monday, and is off work Tuesday, Wednesday, and Thursday. Jamie does not anticipate this schedule changing over the next few years. If Jamie were designated residential parent for school placement purposes, Kaden would attend Pleasant Elementary School which is 5.33 miles from his residence. Jamie testified that his parenting time would be compromised if Kaden attended Olentangy schools due his inability to have full days with Kaden on the weekends. Jamie also stated that Kaden participates in basketball, soccer, and t-ball in Marion and that he feels Kaden has the most "connection" to Marion, as his paternal grandparents, maternal grandmother, cousins, and close friends live in the area.
 {¶ 6} Nicole testified that she lives in Lewis Center in Delaware County and works as a U.S. Marshal in Columbus where she works during the day Monday through Friday and is off work on Saturday and Sunday. If Nicole were to be designated residential parent for school placement purposes, Kaden would attend Olentangy Elementary School where many of Kaden's preschool friends and church friends would attend in fall of 2008. Nicole also testified that the "curriculum" at Kaden's preschool, Hugs and Hearts, mirrored the curriculum at Olentangy. Nicole also stated that Jamie did not participate in selecting Hugs and Hearts as Kaden's pre-school, even though she sought his participation. During Nicole's parenting time, Kaden participates in activities such as church, preschool, family vacations, crafts, educational toys, and athletics. Nicole also testified that Olentangy is located two or three miles from her residence and 31.9 miles from *Page 4 
Jamie's residence; and, that she reviewed school "grade cards" for both schools, with Olentangy earning an "excellent" rating.
 {¶ 7} The trial court appointed Dr. Kathleen Clark of its Family Court Services Department to investigate the matter in accordance with R.C. 3109.04(C). Dr. Clark filed a report stating that:
 During the course of the interviews with both parents, each spoke respectful [sic] of the other parent, the other parent's parenting ability, totally supported the involvement of the other parent in Kaden's life and neither questioned the love and commitment the other parent has for Kaden. Neither expressed a concern about the safety and well being of Kaden in regards to spending time with the other parent. Therefore, the assessment was focused on the adjustment required of the parenting time schedule to accommodate Kaden's school placement.
(Summary of Involvement and Recommendation, p. 1).
 {¶ 8} Additionally, Dr. Clark was deposed, during which she stated that she was a licensed independent social worker. Dr. Clark met with Nicole and Jamie each for approximately an hour and a half. After meeting with the family, Dr. Clark stated that Kaden had friends in both the Marion and Lewis Center communities and that her priority in this case was to create a schedule that would maintain Kaden's relationship with both parents to the best extent possible. She determined that Jamie should be the residential parent for school placement purposes and have parenting time on weekdays because Jamie worked on weekends and did not anticipate any schedule changes in his work; and, that, if *Page 5 
Nicole were designated residential parent and Kaden attended Olentangy, Kaden would only see Jamie on weekend evenings after Jamie returned from work.
 {¶ 9} Dr. Clark also opined that she considered the quality of both Pleasant and Olentangy schools, but that it was not a major factor as Pleasant's "grade card" was only slightly lower than Olentangy's. Moreover, Dr. Clark stated that, in making her decision that Kaden should attend Pleasant, she was considering not just kindergarten, but Kaden's entire kindergarten through twelfth grade education; and, that she did not believe Kaden should have to start school in one district and then transfer to another when he entered first grade.
 {¶ 10} In July 2008, the trial court issued a judgment entry on the motions for reallocation of parental rights and responsibilities. The trial court named Jamie as the residential parent for school purposes.
 {¶ 11} Thereafter, Nicole filed a request for findings of fact and conclusions of law pursuant to Civ. R. 52, to which the trial court replied that:
 [T]he Court concludes that it is in the best interest of the child that the term of the Shared Parenting Plan regarding school placement be modified. The Father shall be named residential for school purposes. See 3109.04(E)(2)(b). The Court concluded in the Judgment Entry dated July 1, 2008 that such an arrangement will provide the minor child with frequent contact with each of his parents.
 {¶ 12} Nicole now appeals, asserting one assignment of error. *Page 6 
 ASSIGNMENT OF ERROR THE LOWER COURT ERRED AND ABUSED ITS DISCRETION IN DETERMINING IT WAS IN THE CHILD'S BEST INTEREST TO DESIGNATE THE APPELLEE THE RESIDENTIAL PARENT FOR SCHOOL PLACEMENT PURPOSES AND MODIFY THE PARTIES' SHARED PARENTING PLAN.
 {¶ 13} In her sole assignment of error, Nicole argues that the trial court erred when it modified the parties' shared parenting plan and determined that it was in Kaden's best interest to designate Jamie as the residential parent for school placement purposes.
 {¶ 14} The standards for our evaluation of the court's decision in this case are set forth in Davis v. Flickinger, 77 Ohio St.3d 415,674 N.E.2d 1159, 1997-Ohio-260.
 [A] trial judge must have wide latitude in considering all the evidence before him or her-including many of the factors in this case-and such a decision must not be reversed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 523 N.E.2d 846.
 The standard for abuse of discretion was laid out in the leading case of C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:
 "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. ( Trickey v. Trickey [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)" *Page 7 
 The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *
 A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."
 This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well.
Davis v. Flickinger, 77 Ohio St.3d at 418-419.
 {¶ 15} Furthermore, the trial court's discretion in determining parental rights must remain within the confines of the relevant statutory provisions. Miller v. Miller, 37 Ohio St.3d at 74. R.C. 3109.04 deals with parental rights and responsibilities, shared parenting, modifications of orders, the best interests of the child and the child's wishes. This section sets out in great detail the court's duties *Page 8 
and responsibilities in dealing with these issues. Badgett v.Badgett (1997), 120 Ohio App.3d 448, 450, 698 N.E.2d 84.
 {¶ 16} Revised Code 3109.04 governs court awards of parental rights and responsibilities, as well as the modification of shared parenting agreements. This Court has previously determined that "when a court is seeking to modify the designation of a residential parent, it must apply R.C. 3109.04(E)(1)(a) and find a change in circumstances prior to modifying the shared parenting plan." Bechtol v. Bechtol, 3rd Dist No. 5-08-08, 2009-Ohio-186 interpretingFisher v. Hasenjager, 116 Ohio St.3d 53, 876 N.E.2d 546, 2007-Ohio-5589. However, if the court is only seeking to change the method of implementation of a shared parenting plan, by changing its terms, it may apply R.C. 3109.04(E)(2)(b) and look only to what is in the best interest of the child. Id.
 {¶ 17} In the present case, the trial court retained both parents as residential parent, but only modified the designation of residential parenting as it applied to "school purposes."[1] Accordingly, we find that the trial court was required to apply the standard as articulated in R.C. 3109.04(E)(2)(b) which provides as follows:
 The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to *Page 9 the plan under this division, unless the modification is in the best interest of the children.
 {¶ 18} Therefore, the trial court was required to determine if modification of the shared parenting agreement was in Kaden's best interest. R.C. 3901.04(F)(1) sets out some relevant factors to be considered when determining what is in the best interest of the child.
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 19} Nicole argues that the trial court erred in finding that it was in Kaden's best interest to designate Jamie as the residential parent for school placement purposes. Specifically, Nicole argues that if she were designated as the residential parent for school placement purposes, Jamie would be able to visit *Page 10 
Kaden at Olentangy, but that designation of Jamie as the residential parent for school placement purposes would prevent her from ever visiting Kaden at Pleasant unless she took time off work.
 {¶ 20} Although, because Jamie had several weekdays off, he would be able to visit Kaden at school if he attended Olentangy, Nicole's argument ignores the other ramifications of this arrangement. As Dr. Clark testified, if Nicole was designated as the residential parent and Kaden attended Olentangy, Kaden would only see Jamie on weekend evenings after Jamie returned from work. Accordingly, we find that the trial court was well within its discretion in adopting the plan designating Jamie as the residential parent for school placement purposes, finding that this arrangement would best allow Kaden frequent contact with both parents.
 {¶ 21} Next, Nicole argues that the trial court erred in failing to grant her request for a guardian ad litem and in allowing Dr. Clark to conduct an evaluation because she did not meet with the parties long enough, because she did not meet with Kaden, and because she did not independently investigate either prospective school or community.
 {¶ 22} R.C. 3109.04(B)(1), (2)(a) provides, in part, that "[i]f the court interviews any child pursuant to division (B)(1) of this section * * * [t]he court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem." However, in accordance with the plain language of the statute, where *Page 11 
the trial court does not meet with the child before entering its judgment, it is not required to appoint a guardian ad litem. Feltz v.Feltz, 3d Dist. No. 10-04-04, 2004-Ohio-4160, ¶ 5. Here, the trial court did not meet with Kaden; thus, it was not required to appoint a guardian ad litem and did not err in failing to do so.
 {¶ 23} Additionally, R.C. 3109.04(C) merely states that, "[t]he court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *." The statute does not require an appointed investigator to meet with the parents for a certain amount of time, to meet with the child, or to independently investigate prospective schools or communities under proposed shared parenting plans. Further, the record reflects that Dr. Clark was appointed pursuant to R.C. 3109.04(C), met with each parent for an hour and a half, and investigated the appropriate factors under R.C. 3109.04, including Nicole's and Jamie's wishes, Kaden's interaction and relationship with his parents and other relatives, Kaden's adjustment to the different communities, and geographic concerns. Thus, the trial court did not err in appointing Dr. Clark to investigate the situation.
 {¶ 24} Finally, Nicole argues that the trial court did not appropriately consider that she had been more actively involved in Kaden's care and development than Jamie had; that Kaden had more friendships in Lewis Center than he did in Marion; that Nicole had been much more flexible and acquiescent than Jamie in order to minimize conflict between the parties; that Jamie chose not *Page 12 
to attempt to change his work schedule from weekends to weekdays in order to gain status as the residential parent; and, that the modified shared parenting schedule drastically reduced Nicole's parenting time. However, evidence was also presented that both parents were actively involved in Kaden's care and development; that Kaden had a close friend and many relatives in the Marion community; that both parties had honored the shared parenting plan and facilitated the other's relationship with Kaden; that Jamie did not anticipate his schedule or his days off changing in the next several years due to his rank at the police department; and, that both parties' opportunities for parenting time would be substantially affected by Kaden's entering school. Additionally, the decision of the trial court reflects that it considered all of the appropriate factors under R.C. 3109.04. Accordingly, we overrule Nicole's assignment of error.
 {¶ 25} Based on the foregoing, the July 1, 2008 Judgment Entry of the Court of Common Pleas, Family Division, of Marion County, Ohio is affirmed.
Judgment Affirmed
 PRESTON, P.J. and WILLAMOWSKI, J., concur.
[1] The terms of the previous shared parenting agreement were left in effect during the summer, when Kaden was not in school. *Page 1