[Cite as *King v. King*, 2012-Ohio-1586.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

JEFFREY KING,

    PLAINTIFF-APPELLEE,           CASE NO. 14-11-23

    v.

AMBER KING,                    O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Union County Common Pleas Court**
**Domestic Relations Division**
**Trial Court No. 09-DR-0211**

**Judgment Affirmed**

**Date of Decision:   April 9, 2012**


APPEARANCES:

    *Alison Boggs*  for Appellant

    *James Roeder*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Amber King ("Amber"), appeals the Union County Court of Common Pleas, Domestic Relations Division's decision designating plaintiff-appellee, Jeff King ("Jeff") the residential parent for purposes of their child's school placement. For the reasons that follow, we affirm.

{¶2} Jeff and Amber were married on May 13, 2006. (Doc. No. 2). S.K., the only child of the marriage, was born on March 16, 2007. (Doc. No. 36). Jeff and Amber divorced on January 21, 2010. (*Id*.). The parties entered into a shared parenting plan on that same day. (Doc. No. 37). The shared parenting plan stated:

> As [S.K.] is not yet school age, each party is designated primary residential parent while [S.K.] is in their physical possession. When [S.K.] reaches school age the parties will agree to designate one or the other as a primary residential parent for school placement purposes in accordance with the parties' mutual decision as to the school that they wish [S.K.] to attend. (*Id*.).

{¶3} On April 1, 2011, Jeff filed a motion requesting that the domestic relations court designate him the residential parent for purposes of S.K.'s school placement because the parties had been unable to reach an agreement on the issue. (Doc. No. 41). If Jeff were designated the residential parent, S.K. would attend school in North Union, Ohio. (*Id*.). On May 23, 2011, Amber filed a motion

requesting that the domestic relations court designate her, rather than Jeff, the residential parent for purposes of S.K.'s school placement. (Doc. No. 53). If Amber were designated the residential parent, S.K. would attend school in Marysville, Ohio. (*Id.*).

{¶4} On August 17, 2011, a domestic relations court magistrate held a hearing on the motions. (Tr. at 4). The magistrate designated Jeff the residential parent for purposes of S.K.'s school placement. (Doc. No. 62).

{¶5} On September 2, 2011, Amber filed objections to the magistrate's decision. (Doc. No. 66). On September 15, 2011, Jeff filed his response to Amber's objections. (Doc. No. 67). On September 23, 2011, the domestic relations court approved and adopted the magistrate's decision. (Doc. No. 68). The domestic relations court issued a judgment entry designating Jeff the residential parent for purposes of S.K.'s school placement on September 30, 2011. (Doc. No. 69).

{¶6} On October 31, 2011, Amber filed a notice of appeal and now raises one assignment of error for our review.[1]

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DESIGNATED APPELLEE THE RESIDENTIAL PARENT FOR SCHOOL PLACEMENT PURPOSES**

---

[1] The end of the 30 day time period for filing a notice of appeal fell on Sunday, October 30, 2011. Under App.R. 14, Amber was permitted to file her notice of appeal on Monday, October 31, 2011.

**{¶7}** In her sole assignment of error, Amber argues the domestic relations court abused its discretion when it designated Jeff as the residential parent for purposes of S.K.'s school placement. Amber contends the magistrate failed to consider that designating Amber as the residential parent would permit S.K. to attend school in Marysville, where both Amber and Jeff work. Amber argues that if S.K. attended school in Marysville, she would be closer to both of her parents while she was at school. Amber contends that S.K.'s proximity to her parents during the school day would be in her best interest because it would better enable her parents to participate in school functions and address emergencies, should they arise.

**{¶8}** When making a determination regarding parental rights, the domestic relations court must follow statutory guidelines. *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "Revised Code 3109.04 governs court awards of parental rights and responsibilities, as well as the modification of shared parenting agreements." *Ralston v. Ralston*, 3d Dist. No. 9-08-30, 2009-Ohio-679, ¶ 16. This Court has previously determined that R.C. 3109.04(E)(2)(b) applies when the domestic relations court modifies the designation of a residential parent for school purposes, but otherwise maintains both parents as residential parents with the same parental rights and responsibilities. *Id.* at ¶ 17. R.C. 3109.04(E)(2)(b) provides:

The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

When determining the child's best interest, the domestic relations court should also consider the factors included in R.C. 3901.04(F)(1), which include:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes, and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving an act that resulted in a child being an abused or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶9} This Court reviews a domestic relations court's decision regarding parental rights for an abuse of discretion. *Ralston* at ¶ 13, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis* at 418. The Supreme Court of Ohio has stated that this standard "is even more crucial in a child custody case." *Id.* at 419.

{¶10} In the present case, the domestic relations court designated Jeff the residential parent for purposes of school placement. (Doc. No. 62). The magistrate stated that "[t]here is nothing wrong with the proposal of either parent. Both are workable and have merit." (*Id.*). However, the magistrate designated Jeff as the residential parent because placing S.K. with Amber relied on the availability of Amber's mother to assist with transportation. (*Id.*). The magistrate determined that Jeff "proposes a routine that has fewer variable [sic] and offers the promise of greater long range continuity." (*Id.*). Consequently, the magistrate decided designating Jeff the residential parent was in S.K.'s best interest. (*Id.*). Pursuant to Civ. R. 53(D)(3)(d), the domestic relations court was then required to "undertake an independent review as to the objected matters to ascertain that the magistrate

has properly determined the factual issues and appropriately applied the law" in response to Amber's objections. The domestic relations court ultimately approved and adopted the magistrate's decision. (Doc. Nos. 68-69).

{¶11} During the hearing, the parties presented limited evidence that mainly focused on how attending each school would affect S.K.'s daily routine. (Tr. at 7-42). Jeff testified that he owns a home in Raymond, Ohio, which is in the North Union School District. (*Id*. at 8, 12). Jeff works from 8 a.m. to 4:30 p.m. on Monday through Friday. (*Id*. at 10). However, Jeff would leave work at 4 p.m. rather than 4:30 p.m. once S.K. begins school so he can be home when she arrives. (*Id*.); (Plaintiff's Ex. 1). Jeff did not foresee any other future changes in his employment or shift hours. (Tr. at 17).

{¶12} On weekdays, Jeff has parenting time with S.K. from the time he leaves work in the evening until he takes her to Amber's home on his way to work the following morning. (*Id*. at 9). Jeff testified that if he were designated the residential parent, S.K. would attend school at North Union where her school day would begin at 9 a.m. and end at 3:45 p.m. (*Id*. at 13). On his way to work, Jeff could either drop S.K. off at North Union's latchkey program or take her to Amber's apartment and Amber could drop S.K. off at school. (*Id*.). At the end of the school day, S.K. would take the bus to Jeff's home and Jeff would be waiting for her at home when she arrived. (*Id*. at 14). Jeff felt the situation was

unfortunate because Amber's work schedule would prevent her from spending as much time with S.K. once S.K. was in school. (*Id*. at 18). Jeff testified that he would be willing to amend the parenting plan in the future to permit Amber to spend more time with S.K. during periods when S.K. did not have school, such as in the summer. (*Id*. at 18). However, Jeff felt it would be in S.K.'s best interest to attend school in North Union because she has been a North Union resident for her entire life. (*Id*. at 19). Furthermore, Jeff has parenting time with S.K. during the school week except for when he is at work, so North Union is where S.K. sleeps every night and awakes every morning. (*Id*.). Jeff testified that S.K. is integrated into his neighborhood and the community, and it would be a natural location for her to attend school activities. (*Id*.).

{¶13} Jeff testified that he had concerns about Amber's proposal because he wanted S.K. to have a normal school day and "be like all the other kids." (*Id*. at 14). Jeff felt that Amber's plan, which would require Amber to pick up S.K. from school, take S.K. to her grandmother and then have her grandmother drive S.K. to Jeff's work where Jeff would then drive her home, was not "normal." (*Id*). Jeff also testified that he was concerned about the stability of Amber's proposal because Amber is considering purchasing a home, and it is possible the home would be located in North Union rather than Marysville. (*Id*.). Jeff testified that the school Amber proposes in Marysville is 17 miles from his home whereas the

school in North Union is 11 miles from his home. (*Id*. at 15-16). Jeff testified that he was not concerned with the mileage when determining which school S.K. should attend, but was more interested in creating "less shuffling around" for S.K. (*Id*. at 25-29).

{¶14} Amber testified that she currently lives in Marysville, Ohio and that S.K. would attend Marysville Schools if Amber were designated the residential parent for school placement purposes. (*Id*. at 30, 34). Amber has parenting time with S.K. beginning at 7:30 a.m. on weekdays, when Jeff drops S.K. off on his way to work. (*Id*. at 32). Amber testified that "[w]e have breakfast, play, I bathe her, we do lunch, and sometimes naps, play some more, and then it's time to go to work." (*Id*.). Amber then drives S.K. to S.K.'s grandmother, who is near Amber's work, at 4 p.m. because Amber has to be at work at 4:30 p.m. (*Id*.). S.K.'s grandmother then drives S.K. to Jeff's work. (*Id*.). Amber testified that this has been the arrangement since S.K. was born, which was while Jeff and Amber were still married. (*Id*. at 32-33). Amber testified that the routine is a little different on Friday afternoons because Amber has to be at work an hour earlier. (*Id*. at 33). Jeff has every other Friday off from work, so Amber takes S.K. to Jeff's house before going to work on those Fridays. On the Fridays when Jeff does have to work, Amber takes S.K. to a Marysville babysitter that they have used since S.K. was an infant. (*Id*.).

{¶15} Amber further testified that if S.K. went to Marysville Schools, her school day would begin at 9 a.m. and end at 3:30 p.m. (*Id*. at 35). Amber would pick S.K. up from school, take S.K. to her grandmother, and her grandmother would take S.K. to Jeff, continuing with the same afternoon routine. (*Id*. at 35). Amber testified that if Jeff changed his work schedule to end at 4 p.m., then Amber could take S.K. directly to Jeff's work at 4 p.m. (*Id*. at 36). Amber testified that she believed the Marysville Schools had a latchkey program and Jeff could pick S.K. up from school after work if Amber were unable to pick S.K. up after school. (*Id*.). In the mornings, Jeff would continue to drop S.K. off at Amber's home at 7:30 a.m. and Amber would prepare her for school. (*Id*.).

{¶16} Amber testified that she took issue with Jeff's proposal because the North Union Schools are 24 minutes from her home (*Id*. at 38). Amber would like to become involved in S.K.'s school by participating in field trips and helping in the classroom. (*Id*.). Amber expressed concern that if S.K. attended the North Union Schools, it would be more difficult for Amber to attend these events due to her work schedule. (*Id*. at 39). Amber felt it would be in S.K.'s best interest to attend the Marysville Schools because both of her parents are in Marysville during the day, so they can respond quickly if there were an emergency. (*Id*.). Amber also testified that Jeff finishes work for the day around the time that S.K. finishes school, so Amber believed S.K. would still be able to participate in school

activities at the Marysville Schools since Jeff would already be in the area. (*Id*. at 40).

{¶17} Amber argues the domestic relations court abused its discretion by designating Jeff the residential parent for purposes of school placement because its decision in the present case is inconsistent with its prior decision in *Fischer v. Fischer*, 09-DR-0096 (2010). We disagree. In *Fischer*, the domestic relations court rejected the father's proposed shared parenting plan for a number of reasons. The parties lived 35 to 40 minutes apart, and the father proposed a plan that would place the child with each parent on alternating weeks. (*Id*.). The child would attend a school that was located between the parents' homes. (*Id*.). The domestic relations court determined this plan was not in the best interest of the child because it would require the child to spend at least an hour each day commuting to and from school regardless of where the child was staying for that week. (*Id*.). Based on the age and financial condition of the parents, the domestic relations court was concerned that the parents would be unable to afford the cost of operating and maintaining the vehicles, and was also concerned about the safety and reliability of their respective vehicles given the commute. (*Id*.). The domestic relations court also stated that the child would have less access to playmates and school activities because both parents lived at a considerable distance from the school. (*Id*.). The parties presented evidence that the child had medical issues, so

the domestic relations court was concerned about the time it would take the parents to arrive at the school in the case of an emergency. (*Id*.). Finally, the domestic relations court felt the alternating schedule would be too disruptive for the child's schedule and routine. (*Id*.).

{¶18} Amber argues that based on this case, the domestic relations court abused its discretion in not designating her the residential parent for purposes of school placement because of the distance of the North Union Schools to the parents during the day. Amber argues that she will have a 24 minute commute to the North Union School with S.K. each morning versus a much shorter commute to the Marysville School located near her home. Amber also contends that since both parents work in Marysville, S.K. will be much closer to them in the case of an emergency if she attends the Marysville Schools. However, unlike in *Fischer*, the parties in the current case did not present any evidence that the commute to North Union Schools would be prohibitively costly given their financial condition or unsafe based on their vehicles. The parties did not present any evidence that S.K. has medical issues requiring her parents to be close to her during the day. Furthermore, Jeff resides near the North Union Schools, so S.K. will have access to playmates and activities. Finally, S.K.'s schedule will be consistent on a daily basis. Thus, the present case does not involve the same factors as *Fischer*, and we cannot find that the domestic relations court abused its discretion.

{¶19} Amber also relies on this Court's decision in *Ralston v. Ralston*, arguing that this Court should reverse the domestic relations court's decision and designate Amber the residential parent because it would maximize S.K.'s time with each of her parents. 2009-Ohio-679. Amber contends that designating Jeff the residential parent and placing S.K. in North Union Schools will reduce the time Amber spends with S.K. and is not in S.K.'s best interest.

{¶20} Our decision in this case is consistent with our prior opinion. In *Ralston*, we affirmed the domestic relations court's designation of the father as the residential parent for school placement purposes. *Id*. at ¶ 25. In that case, the father was a police officer who worked ten-hour day shifts Friday through Monday. *Id*. at ¶ 5. If the mother were named the residential parent for purposes of school placement, the father would only see the child on weekend evenings after he returned from work. *Id*. at ¶ 20. The mother worked a more traditional schedule and was available on weekday evenings as well as the weekend. *Id*. at ¶ 6. Thus, designating the father as the residential parent for school purposes would permit the child to have "frequent contact with both parents" because the child would spend time with the father during the week and the mother on the weekend. *Id*. at ¶ 20. In the present case, Amber and Jeff will continue to have frequent contact with S.K. if Jeff is designated the residential parent for school placement purposes. Amber will continue to have parenting time with S.K. in the morning

and on weekends, and Jeff will continue to have parenting time with her in the evening and on weekends. (Doc. No. 62). Thus, we cannot find that the domestic relations court abused its discretion based on our decision in *Ralston*.

{¶21} We also cannot find that the domestic relations court abused its discretion by adopting the magistrate's decision and designating Jeff the residential parent for purposes of school placement based on the evidence. (Doc. Nos. 68-69). The evidence presented at the hearing demonstrated that either parent's proposal is feasible. However, we agree with the domestic relations court that designating Jeff the residential parent for purposes of school placement is in S.K.'s best interest because it results in greater long term stability. S.K.'s routine will be the same every day if she attends North Union Schools. (Tr. at 8-14). Jeff will drive S.K. to Amber's home in the morning, Amber will prepare her for school, Amber will then transport her to school, S.K. will take the bus to Jeff's house at the end of the day, and Jeff will be at home when she arrives. (*Id.*). This arrangement eliminates the need for third parties such as S.K.'s grandmother or the Marysville baby-sitter, who may not be available in the future. It also simplifies the schedule so S.K. will know what to expect each day. Jeff testified that he intends to remain in North Union, so S.K. will remain in the same school district and have stability throughout grade school and high school. (Tr. at 17).

Moreover, Amber testified that she would like to purchase a home. (Tr. at 40). It is possible that her new location would reduce the travel time to S.K.'s school.

{¶22} Additionally, S.K. has ties with the community in North Union. S.K. has resided in that area since she was born. (Tr. at 19). Jeff still lives in the marital home he shared with Amber. (*Id*.). Thus, S.K. goes to sleep in North Union District each night and awakes in North Union District each morning. (*Id*.). Attending North Union Schools will result in S.K. having friends and school activities in the area where she will spend most of her school week. (*Id*.). Consequently, we cannot find that the domestic relations court abused its discretion by adopting the magistrate's decision.

{¶23} Amber's assignment of error is, therefore, overruled.

{¶24} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**