[Cite as *Fritsch v. Fritsch*, 2014-Ohio-5357.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JESSICA LEA FRITSCH, n.k.a. WIETMARSCHEN, | : | APPEAL NO. C-140163 |
| | | TRIAL NO. DR0802284 |
| | : | |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
| | : | |
| vs. | | |
| | : | |
| CHRISTOPHER FRITSCH, | | |
| | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 5, 2014

*Rollman & Handorf, LLC*, and *Jacqueline M. Handorf-Rugani,* for Plaintiff-Appellant,

*Suhre & Associates, LLC,* and *B. Bradley Berry*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1}     Plaintiff-appellant Jessica Lea Fritsch n.k.a. Wietmarschen ("mother") appeals from a decision of the Hamilton County Court of Common Pleas, Domestic Relation Division, granting the motion filed by defendant-appellee Christopher Fritsch ("father") to modify the parties' shared-parenting plan.  We find no merit in mother's sole assignment of error, and we affirm the trial court's judgment.

{¶2}     The parties' marriage was terminated by a decree of dissolution on December 12, 2008.  The decree incorporated a shared-parenting plan for the parties' two children, Nathaniel and Zachery, born in 2003 and 2006.  Under the plan, the parties were both named as residential parents "without regard to where the children are physically located" and shared relatively equal parenting time.

{¶3}     On the issue of schooling, the plan stated that "[t]he residence of Mother shall be considered the primary place of residence for the minor children for school purposes as well as the mailing address for school records and documents involving the minor children."  It also stated, "The parents agree that Mother's residence will be used for school registration purposes for the minor children.  * * * Both parents recognize that the children legally may attend either parent's school system."

{¶4}     At the time the plan was journalized, mother was a resident of Reading, Ohio, and father lived in a nearby community.  Subsequently, father moved to Reading.  The children attend Hilltop Elementary in the Reading Community School District.

{¶5} The shared-parenting plan also allowed either party to relocate anywhere in Hamilton, Butler, Clermont or Warren counties. In April 2013, mother filed a notice of intent to relocate to an address in Butler County in the Lakota Local School District. In response, father filed a motion to modify the shared-parenting plan to make him the residential parent for school purposes.

{¶6} Evidence presented at a hearing before a magistrate showed that mother moved to Butler County in June 2013. During her parenting time, she and the two children reside with her fiancé and his son.

{¶7} Before mother's relocation, both parents and both sets of grandparents lived in close proximity to each other in or near Reading. The boys had always lived in Reading and attended school in Reading. They have done well in the Reading Schools and are exceptional students. They have healthy friendships and strong connections with other children in the community.

{¶8} Father testified that his residence was approximately one-half mile from the boys' school. He works as a police officer and fire fighter in a neighboring community, and he can often stop by the school even when he is on duty. If the children are sick or an emergency occurs, he is able to pick up the children in minutes. Because of his close proximity to the school, he has been able to attend many in-school events.

{¶9} Father has also been involved in the boys' extracurricular activities. He fears that if the boys are enrolled in the Lakota School District, he will not be able to participate at the same level as he does now because it will take him 25 to 30 minutes to get there. Because the boys would attend separate schools with different start times in the Lakota School District, father estimated that during his parenting

time, he or his wife would have to spend a substantial amount of time transporting the boys to and from school.

{¶10}   In the Reading schools, the boys have the same start time and end time.  Several family members, who can pick them up and transport them to extracurricular activities when they get out of school for the day or help them with their homework, live within minutes of Hilltop.  Also, on some days, the boys can walk or ride their bicycles to school from father's residence.

{¶11}   Mother testified that although she lived in Reading when the shared-parenting plan was signed, she had talked with father about her plans to move out of that school district when the younger child started kindergarten.  She stated that she usually takes care of school business for the boys. She assists both of them with their homework and signs their daily assignment books. She attends all conferences and programs.  Mother has also coached the boys' sports teams and participated in their extracurricular activities.  She testified that she will remain active in whichever school district the boys attend.

{¶12}   Mother has a flexible work schedule that allows her to maximize her time with the children.  While father's parents live in Reading, his siblings live in the Lakota school district and his parents had assisted with the siblings' children.  Though mother's parents live in Reading, they will help out with the boys regardless of where they attend school.

{¶13}   Mother has investigated the schools in the Lakota school district, and she believes that the boys will be better educated there.  She testified that Lakota schools offer better club teams, more foreign languages, more extracurricular activities and better volunteer opportunities.  Additionally, they offer full-time

advanced-placement courses, including programs for gifted children, which the Reading schools do not.

{¶14} The magistrate rejected mother's argument. She found that it was in the children's best interest for them to remain in the Reading school district, and granted father's motion. Mother objected to the magistrate's decision. The trial court overruled all but one of her objections, and adopted the magistrate's decision with one modification. This appeal followed.

{¶15} In her sole assignment of error, mother contends that the trial court erred in granting father's motion to modify the shared-parenting plan. She argues that to modify the shared-parenting plan, father had to prove that a change of circumstances had occurred, and that the trial court erred in solely relying on the best-interests-of-the-children test. This assignment of error is not well taken.

{¶16} When determining parental rights, the domestic relations court must follow statutory guidelines. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8. The determination of which statutory standard applies is a question of the law that this court reviews de novo. *Picciano v. Lowers*, 4th Dist. Washington No. 08CA38, 2009-Ohio-3780, ¶ 19. We review the court's decision allocating parental rights for an abuse of discretion. *Miller* at 74; *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 41.

{¶17} R.C. 3109.04(E) governs the modification of shared-parenting decrees. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 11. Mother relies upon R.C. 3109.04(E)(1)(a), which provides:

> The court shall not modify a prior decree allocating parental rights and
> responsibilities for the care of children unless it finds, based on facts

5

that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

{¶18}   In interpreting this section, the Ohio Supreme Court has stated that "[a] modification of the designation of residential parent and legal custodian of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child." *Fisher* at syllabus.  In so holding, it stated:

> R.C.  3109.04(E)(1)(a) expressly provides for the modification of parental rights and responsibilities in a decree.  An allocation of parental rights and responsibilities is a designation of the residential parent and custodian.  Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian.

*Id.* at ¶ 26.

{¶19}  The trial court held that R.C. 3109.04(E)(1)(a) does not apply in this case.  Instead, the court held that R.C. 3109.04(E)(2)(b) applies.  It provides:

> The court may modify the terms of the plan for shared parenting approved by the court and incorporated into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree.  Modifications under this division may be made at any time.  The court shall not make

6

any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶20} The terms of a shared-parenting plan do not allocate ultimate legal and physical control. Instead, the terms of a shared-parenting plan include provisions relative to the care of a child that are more likely to require change over time, such as the child's living arrangements, medical care, and school placement. *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 36; *Picciano*, 4th Dist. Washington No. 08CA38, 2009-Ohio-3780, at ¶ 23. Thus, R.C. 3109.04(E)(2)(b) provides for a lower standard for modifying the terms of a shared-parenting plan, because those terms are not as critical to the life of a child as the designation of the child's residential parent and legal custodian. *Fisher* at ¶ 36; *Picciano* at ¶ 21.

{¶21} The Third Appellate District has held that R.C. 3109.04(E)(2)(b) applies when the domestic relations court modifies the designation of a residential parent for school purposes, but otherwise maintains both parents as residential parents with the same parental rights and responsibilities. *See King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, at ¶ 8; *Ralston v. Ralston*, 3d Dist. Marion No. 9-08-30, 2009-Ohio-679, ¶ 17. We agree. Therefore, we hold that the trial court in this case correctly applied the best-interest-of-the child test under R.C. 3109.04(E)(2)(b). The court did not have to determine that a change of circumstances had occurred to modify the designation of the residential parent for school purposes.

{¶22} Mother argues that the ultimate outcome of the court's decision was a change to the prior designation of the residential parent and legal custodian, thus requiring a finding of a change of circumstances. She cites language in the magistrate's decision, which stated, "The Shared Parenting Plan shall be modified to

7

include the following sentences: Father shall be named the residential parent and legal custodian of the minor children for school purposes. Father's residence shall be used for school registration purposes at this time."

{¶23} In her third objection to the magistrate's report, mother argued that that language was contradictory given the magistrate's statement that R.C. 3109.04(E)(2)(b), and not R.C. 3109.04(E)(1)(a), applied. In ruling on that objection, the trial court stated:

> Due to the language used in the Magistrate's Decision, Mother's third objection is well taken in part. However, the Court finds that it was the Magistrate's intention to modify a term of the Shared Parenting Plan, not to change the designation of residential parent and legal custodian. Upon an independent review, the Court finds that the modification of the Shared Parenting Plan is in the best interest of the minor children. Therefore, the "Decision" portion of the Magistrate's Decision is hereby vacated. This Court's Decision is as follows, Father's motion is granted. The Shared Parenting Plan shall be modified as follows: The residence of Father shall be considered the primary place of residence for the minor children for school purposes as well as the mailing address for school records and documents involving the minor children.

The trial court's decision was consistent with its duty to independently review the magistrate's findings of fact and conclusions of law, and with its authority to adopt, reject, or modify the magistrate's decision. *See* Civ.R. 53(D); *Metz v. Metz*, 1st Dist. Hamilton No. C-050463, 2007-Ohio-549, ¶ 55.

{¶24} Applying R.C. 3109.04(E)(2)(b), the trial court determined, based on the evidence presented, that it was in the children's best interest to remain in the Reading school district. The trial court considered the factors listed in R.C. 3109.04(F)(1) in making that determination. *See King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, at ¶ 8; *Picciano*, 4th Dist. Washington No. 08CA38, 2009-Ohio-3780, at ¶ 27. Under the circumstances, we cannot hold that the trial court's decision was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983); *Coors v. Maceachen*, 1st Dist. Hamilton No. C-100013, 2010-Ohio-4470, ¶ 13. Consequently, we overrule mother's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**HILDEBRANDT, P.J.**, and **DEWINE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.