[Cite as *Marimon v. Marimon*, 2021-Ohio-3437.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BRIAN MARIMON, | : | APPEAL NO. C-210137 |
| | | TRIAL NO. DR-1400503 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| AMANDA MARIMON, | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations
              Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  September 29, 2021

*Dever Hoberg, LLC,* and *Scott A. Hoberg*, for Plaintiff-Appellant,

*Tibbs Law Firm* and *Jordan A. D'Addario*, for Defendant-Appellee.

**WINKLER, Judge.**

{¶1} Plaintiff-appellant Brian Marimon ("Father") appeals a decision of the trial court designating defendant-appellee Amanda Marimon ("Mother") as the residential parent for purposes of their children's schooling in the parties' shared-parenting plan. Because we find no abuse of discretion with regard to the trial court's decision, we affirm.

## Background

{¶2} Mother and Father entered into a shared-parenting plan in 2014 with respect to their three children, born in 2008, 2010, and 2012. At that time, both Father and Mother were living in the Northwest Local School District. Under the plan, the parties agreed that Father would be designated as the residential parent for school purposes, and that the children would attend Monfort Heights Elementary through the fifth grade.

{¶3} In August 2018, Mother moved to Monroe, Ohio, in the Lakota Local School District. The following year, in September 2019, Father filed a motion to terminate shared parenting, and a motion for change of parental rights and responsibilities. In response, Mother filed a motion to modify the terms of the shared-parenting plan to designate her as the residential parent for school purposes. Father also filed a motion for the trial court to conduct an in camera interview with respect to their eldest child.

{¶4} In late 2020 and early 2021, the matter proceeded to trial. The custody investigator employed by the court testified that she had interviewed Father, Mother, the children, and Mother's new husband. The custody investigator found

both parents provided a good environment for the children. Nevertheless, the custody investigator received multiple reports that the children spent a large amount of time with paternal grandparents during Father's parenting time, even though Father was not employed at the time. Also, Mother's choice to move 35 minutes from Father created confusion for the children and placed them in the middle of their parents' conflict regarding schooling. The custody investigator ultimately recommended that the children stay in their current school system, and that the children spend the night at their Father's home during the school week for more structure.

{¶5} After the testimony from the custody investigator, Father definitively dismissed his request for termination of shared parenting and legal custody, and instead, Father requested that the trial court adopt the recommendation of the custody investigator. According to Father, the children were too tired at school on the mornings after they had spent the night at Mother's home. With regard to where the children would attend school, Father testified that he wanted his younger children to stay in the Northwest Local School District, but he did not want his eldest child, who was in seventh grade at the time, to attend the local high school, Colerain High School. Father also did not want the children to attend school in the Lakota school district. Although Father was unemployed at the time of trial, he testified that he had been looking for a job that would allow him to be present with his children.

{¶6} Unlike the custody investigator and Father, Mother felt that it would be in the best interest of the children to continue roughly the same parenting-time schedule. Mother also requested that the children attend school in her district of residence, Lakota school district. Mother felt that the Lakota school system would

3

provide a good education for her children, and that the children would have friends from church. Mother also had recently become a paramedic, which would allow her to have the flexibility to get the children off the bus and help them with their homework.

{¶7}  At the conclusion of trial, the trial court granted Mother's motion to modify the shared-parenting plan to designate Mother as the residential parent for school purposes. The trial court made the decision based upon the custody investigator's concern over the children's stability, both parents' wishes that the children not attend Colerain High School, Father's uncertain work schedule, his reliance on paternal grandmother for childcare, and Mother's new job that allows her more time with the children.

{¶8}  Father appeals.

### The In Camera Interview Requirement in Custody Disputes

{¶9}  In his first assignment of error, Father argues that the trial court erred by failing to conduct an in camera interview of the parties' eldest child prior to designating Mother as the residential parent for school purposes.

{¶10} Father relies on R.C. 3109.04(B)(1), which requires the trial court to conduct an in camera interview of a child, if requested by either party, "[w]hen making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation[.]"

{¶11} According to Mother, the modification of the terms of a shared-parenting plan is not an allocation of parental rights and responsibilities. Therefore, R.C. 3109.04(B) does not apply. Mother argues that the underlying proceeding is

governed by R.C. 3109.04(E)(2)(b), which contains no requirement for an in camera interview of the minor child as requested by Father.

{¶12} R.C. 3109.04(E)(2)(b) provides in relevant part that "[t]he court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree * * * upon the request of one or both of the parents under the decree." Modifications to the terms of a shared-parenting plan under R.C. 3109.04(E)(2)(b) can be made at any time, so long as the modification is in the best interest of the children. *Id.*

{¶13} The distinction between a "plan" and a "decree" as those terms are used in R.C. 3109.04 was explained by the Ohio Supreme Court in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546:

> Within the custody statute, a "plan" is statutorily different from a "decree" or an "order." A shared-parenting order is issued by a court when it allocates the parental rights and responsibilities for a child. R.C. 3109.04(A)(2). Similarly, a shared-parenting decree grants the parents shared parenting of a child. R.C. 3109.04(D)(1)(d). An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.
>
> However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order.

*Id.* at ¶ 29-30.

5

{¶14} Following *Fisher*, this court held in *Fritsch v. Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, ¶ 21, that R.C. 3109.04(E)(2)(b) governs the modification of the residential parent for school purposes in a shared-parenting plan. *See Ralston v. Ralston*, 3d Dist. Marion No. 9-08-30, 2009-Ohio-679, ¶ 17 (holding that the trial court was required to apply R.C. 3109.04(E)(2)(b) when modifying the designated residential parent for school purposes); *In re T.G.O.*, 12th Dist. Madison No. CA2016-02-009, 2017-Ohio-151, ¶ 9.

{¶15} Here, because the decision of the trial court only modifies the designation of the residential parent for school purposes, it does not involve a modification of an "order" or "decree" of the allocation of parental rights. *See* R.C. 3109.04(K)(7) (the designation of one parent as residential parent for school placement purposes does not affect the designation of each parent in a shared-parenting order as the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child). By contrast, the in camera interview requirement in R.C. 3109.04(B)(1) specifically refers to proceedings "making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation[.]"

{¶16} In this case, the trial court's decision granting Mother's motion to modify the terms of the shared-parenting plan to change the residential parent for school purposes is governed by R.C. 3109.04(E)(2)(b), and the in camera interview requirement in R.C. 3109.04(B)(1) does not apply. The trial court was not required to hold an in camera interview of the parties' eldest child prior to modifying the terms of the shared-parenting plan. We overrule Father's first assignment of error.

**Changing the Residential Parent for School Purposes**

{¶17} In his second assignment of error, Father argues that the trial court erred in designating Mother as the residential parent for school purposes.

{¶18} Father argues that the trial court erred by failing to properly apply R.C. 3109.04(E)(1)(a). R.C. 3109.04(E)(1)(a) provides in relevant part that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children" unless a change of circumstances has occurred, and "the modification is necessary to serve the best interest of the child." According to Father, Mother created the change of circumstances by moving away from the Northwest Local School District to Butler County.

{¶19} R.C. 3109.04(E)(1)(a) does not apply in this case. As stated above, the court in *Fisher* recognized the distinction in R.C. 3109.04 between the modification of a decree and modification of terms of the shared-parenting plan. The Ohio Supreme Court recently reaffirmed this distinction: "R.C. 3109.04(E)(1)(a) allows for modification of a shared-parenting decree. R.C. 3109.04(E)(2)(a) and (b) allow for the modification of the terms of a shared-parenting plan." *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, ¶ 11.

{¶20} As this court held in *Fritsch*, a change in designation of a residential parent for school purposes in a shared-parenting plan constitutes a modification of the terms of the plan and is governed by R.C. 3109.04(E)(2)(b). *Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, at ¶ 21. Because R.C. 3109.04(E)(1)(a) does not apply, the trial court was not required to find a change of circumstances prior to modifying a term of the shared-parenting plan.

{¶21} Finally, Father argues that the trial court erred in determining that the best interests of the children would be served by designating Mother as the residential parent for school purposes. Father argues that the trial court erred in applying the best-interest factors in R.C. 3109.04(F)(1). R.C. 3109.04(F)(1) provides a nonexhaustive list of eight factors a trial court must consider when determining the best interests of a child for purposes of "an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities * * *."

{¶22} Father's weight-of-the-evidence argument assumes that the best-interest factors in R.C. 3109.04(F)(1) govern the analysis in R.C. 3109.04(E)(2)(b), which allows the trial court to modify the terms of the shared-parenting plan so long as "the modification is in the best interest of the children." However, nothing in R.C. 3109.04(E)(2)(b) explicitly requires the trial court to examine the factors in R.C. 3109.04(F)(1), and R.C. 3109.04(F)(1) by its terms applies to "an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities"—not modifications of terms of the shared-parenting plan. *See Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 29 (determining that the custody statute distinguishes between "plan" and "decree"). Therefore, although the trial court was required to consider the children's best interest in modifying the terms of the shared-parenting plan with regard to school placement, the trial court was not required to specifically consider the factors enumerated in R.C. 3109.04(F)(1).

{¶23} As a general matter, modifications to a shared-parenting plan are reviewed for an abuse of discretion. *Hall v. Hall*, 4th Dist. Adams No. 16CA1030,

2017-Ohio-8968, ¶ 19. Here, the trial court decided that the children's best interests would be served by attending the Lakota school district in Mother's neighborhood. The record supports that decision.

{¶24} Father and Mother clearly could not agree on where to send their children to school. Both parents testified that they did not want their eldest child to attend Colerain High School; however, a continuation of Father as residential parent for purposes of school placement meant that their eldest child would attend Colerain in less than two years, unless the parents could agree otherwise. The eldest child relayed to the custody investigator that he had heard Colerain was not "the greatest" and that his parents would have to "figure out" where he would attend high school. One of their younger children struggled in school and had an individualized education plan, which would likely require the child to attend a public high school.

{¶25} In addition, Mother started a new job as a paramedic, which would allow her more time to be involved with her children's schooling. The record shows that paternal grandmother provided a great deal of the childcare during Father's parenting time. Father was unemployed at the time of trial, and so his work schedule was unknown.

{¶26} Ultimately, the trial court had a difficult decision to make for these children, and this decision was not an abuse of discretion. We overrule Father's second assignment of error.

## Conclusion

{¶27} The trial court did not abuse its discretion in modifying the parties' shared-parenting plan to designate Mother as the residential parent for school purposes. We affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.