[Cite as *In re G.B.*, 2022-Ohio-382.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE G.B.

A Minor Child

[Appeal by J.H., Father]

:
:
:
:
:
:

No. 110730

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 10, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU-09-121874

***Appearances:***

Lanter Legal L.L.C., and Joseph J. Lanter, *for appellant.*

Hans C. Kuenzi Co., L.P.A., and Hans C. Kuenzi, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Father-appellant, J.H. ("Father"), appeals from the juvenile court's decision designating Mother-appellee, R.T. ("Mother"), as the residential parent for their daughter, G.B., for school purposes, and reducing Father's parenting time after Mother moved from Lakewood, Ohio to Jefferson, Ohio — approximately 60 miles and 90 minutes away from Father. Father contends that the juvenile court abused

its discretion in designating Mother the residential parent for school purposes and modifying the parties' parenting time because (1) the juvenile court failed to properly apply R.C. 3109.04(E)(1)(a), (2) its decision was not supported by substantial competent and credible evidence and (3) the juvenile court failed to consider G.B.'s wishes as required by R.C. 3109.04(F)(1)(b).

{¶ 2} For the reasons that follow, we affirm.

**Procedural and Factual Background**

{¶ 3} On July 27, 2010, the juvenile court approved and entered an agreed shared-parenting plan executed by the parties. At that time, G.B. (date of birth March 24, 2008) was two years old and the parties lived 10-15 minutes away from one another, Father living in Cleveland and Mother living in Lakewood. Under the shared-parenting decree, both Mother and Father were designated residential parents and legal custodians of G.B. Mother was also designated the residential parent for school purposes; however, the shared-parenting plan stated that "[i]f [M]other moves from Lakewood, OH[,] then if the parties can't agree[,] they will file a motion to determine the residential parent for school purposes, only."

**The Parties' Motions to Modify the Shared-Parenting Plan**

{¶ 4} On March 8, 2019, when G.B. was nearly 11 years old, Father filed a motion to modify the shared-parenting plan. Father requested that he be granted additional parenting time so that G.B. could spend "equal time with each family" and to allow G.B. to participate in extracurricular activities. Father also requested

"stronger language" in the agreement to "compel[] better cooperation between [the] parents."

{¶ 5} On April 18, 2019, Mother filed a notice of intent to relocate and motion to modify the shared-parenting plan. Mother indicated that she intended to relocate to "the eastside of Cleveland" and requested that the parties' parenting time be modified to "better suit the best interest of the child" "[d]ue to the distance between Father's residence and Mother's intended residence."

{¶ 6} On May 6, 2019, Father filed a motion for a restraining order pursuant to Juv.R. 13, seeking to prevent Mother from changing G.B.'s school when she moved outside of Cuyahoga County. In an affidavit submitted in support of the motion, Father averred that G.B. had attended Lakewood City Schools "throughout her life," that G.B. had "expressed * * * her adamant desire to remain in Lakewood schools" and that he believed it was in G.B.'s best interest to remain enrolled in Lakewood City Schools. Father argued that the shared-parenting plan did not permit Mother to change G.B.'s school without a court order. He requested that he be designated the residential parent for school purposes and that Mother's parenting time be modified to account for the distance between Mother's and Father's residences.

{¶ 7} Mother opposed the motion, arguing that she has "always been the primary residential parent for school purposes" and that that "needn't change on a temporary basis nor should [G.B.] be precluded from being enrolled in school."

{¶ 8} On May 23, 2019, Mother filed a motion for temporary orders pursuant to Juv.R. 13. Mother claimed that Father was hiring G.B. out for "aerial/pole dancing activities" and that images of G.B. engaging in aerial dancing activities had been posted on a website without Mother's consent. Mother requested that the court enter temporary orders terminating G.B.'s participation in such activities and requiring Father to remove all images of G.B. engaging in such activities from the internet. Mother further indicated that she and her husband would be moving "in the upcoming months" and requested that the court enter a temporary order modifying the parenting-time schedule to accommodate the move.

{¶ 9} Father opposed Mother's motion, asserting that Mother was mischaracterizing G.B.'s participation in aerial dancing. He claimed that Mother had previously supported G.B.'s participation in aerial dancing, including posting pictures of her dancing on social media. Father further asserted that, upon receipt of Mother's motion, he had taken steps to remove any images of G.B. engaging in aerial dancing from the internet, therefore, that portion of Mother's motion was moot.

{¶ 10} On July 31, 2019, the juvenile court granted Father's motion for a restraining order, designated Father as the temporary residential parent for school purposes and entered an interim modified parenting time schedule, pursuant to which Mother was granted weekend parenting time with G.B. for three weekends each month. The juvenile court granted Mother's motion for temporary orders, in

part, prohibiting any depiction of G.B. on the internet related to her participation in aerial dancing. The juvenile court also appointed a guardian ad litem for G.B.

{¶ 11} On March 23, 2020, Mother filed a motion to be designated sole residential parent and legal custodian of G.B. Mother asserted that "significant changes have occurred in the circumstances" of the parents and G.B. and that, should the court find that shared parenting was not in G.B.'s best interest, G.B.'s best interest would be served by designating Mother as the sole residential parent and legal custodian because Mother and G.B. "enjoy a loving and fulfilling relationship" and Mother is "well equipped to serve as a fit and proper primary custodian for her daughter."

**The Guardian ad Litem's Written Report and Recommendation**

{¶ 12} On February 26, 2020, the guardian ad litem submitted her written report and recommendation. The guardian ad litem indicated that she had interviewed G.B., Mother, Father, G.B.'s stepparents, extended family members, G.B.'s counselor and the parents' legal counsel and had reviewed various documents, including the court file, documents provided in discovery and G.B.'s school records. The guardian ad litem reported that Father believed he should be designated the residential parent for school purposes because Mother was not interested in fostering G.B.'s interest and participation in extracurricular activities. The guardian ad litem noted that Father also expressed concerns regarding Mother's lack of attention to school events involving G.B. The guardian ad litem reported that Mother believed she should be designated the residential parent for school purposes

because G.B. was usually with her stepmother, E.H., rather than with Father, during Father's parenting time and, as a result, her "role as mother" was "being minimized." The guardian ad litem reported that Mother wanted Father's parenting time with G.B. to correspond with his time off from work. The guardian ad litem noted that Mother was not opposed to G.B. being involved in extracurricular activities but that the distance between the two residences and the fact that Mother had three other young children, made it difficult for Mother to attend G.B.'s events when G.B. was in Lakewood.

{¶ 13} With respect to G.B.'s wishes, the guardian ad litem reported that G.B. had expressed a strong, consistent desire to remain in Lakewood City Schools and was "distress[ed]" at the thought of having to change schools because she wanted to retain her current friend group and thought changing schools would be difficult for her. The guardian ad litem noted that G.B. had indicated that if the circumstances were reversed, i.e., if Father had moved to Jefferson and Mother had remained in Lakewood, she would want to live primarily with Mother so she could continue to attend Lakewood City Schools. The guardian ad litem reported that G.B. has positive relationships with her parents, her stepparents and her siblings and that she is comfortable living at both houses. The guardian further reported that G.B. believes Father would be more likely to support her participation in extracurricular activities. The guardian ad litem indicated that G.B. is stressed and anxious as a result of the parties' custody dispute and has been in counseling to assist her in developing coping skills and communicating more effectively with her parents. The

guardian ad litem noted that G.B. was "saddened" that, as a result of Mother's move to Jefferson, she was not able to see Mother during the week and was not able to enjoy weekend parenting time with Father as often as she would like.

{¶ 14} The guardian ad litem indicated that both parents were "appropriate" for designation as the residential parent for school purposes, that both parents were committed to the best interest of G.B. and that both parents were able to meet her basic, ongoing needs. However, after "thoughtful consideration" of all the relevant factors, the guardian ad litem recommended that Mother be designated the residential parent for school purposes. The guardian ad litem acknowledged that her recommendation differed from G.B.'s wishes but stated that G.B. is "an exceptionally gifted student" and that "[t]here is no reason to believe that she would not perform as well in a new school setting." The guardian ad litem further recommended that Father be granted liberal parenting time and that Father's work schedule be the "determinative factor" in creating a modified parenting-time schedule.

**The Evidentiary Hearing**

{¶ 15} After multiple continuances, the juvenile court held an evidentiary hearing on the parties' motions on June 7 and 8, 2021. On June 25, 2021, it conducted an in camera interview of G.B.

{¶ 16} At the time of the hearing, G.B. was 13 years old and had just completed seventh grade. G.B. is, by all accounts, an excellent student. Father testified that G.B. had been recently accepted into the College Credit Plus program

at Cuyahoga Community College through which she could begin earning college credit. Mother and Father testified that G.B. is "friendly" and "social" but is "very introverted" and has a small group of close, long-term friends.

{¶ 17} At the time of hearing, Mother and her husband, M.T., lived in Jefferson, Ohio with their three children, ages 9, 4 and 2. Father and his wife, E.H., lived in Lakewood, Ohio with their 5-year-old son and E.H.'s son from a prior relationship, age 10. Mother is a stay-at-home parent. Father is a paramedic who works from 7 p.m. to 7 a.m. on two-night rotations (i.e., two nights on, two nights off) during the week and on Saturday, Sunday and Monday every other weekend. When Father is working during his parenting time, E.H. supervises G.B. Father testified that G.B. has a "good" relationship with E.H.

{¶ 18} Father argued that he should be designated the residential parent for school purposes because he has always been "very active" at G.B.'s school, e.g., attending parent-teacher conferences, volunteering for field trips, assisting at class parties and attending school functions and has supported G.B.'s participation in extracurricular activities in which she has demonstrated an interest. Father stated that, prior to Mother's move to Jefferson, i.e., from preschool until the end of fifth grade, Mother was somewhat involved in G.B.'s school activities and that they generally attended parent-teacher conferences together but that Mother was "[n]ot as involved as [he] was" and that Mother's involvement in G.B.'s academic activities dropped off following her move to Jefferson. Mother acknowledged that she did not attend G.B.'s parent-teacher conferences in 2019, 2020 or 2021 and that she did not

attend G.B.'s DARE graduation ceremony in February 2019, G.B.'s fifth grade school graduation party in May 2019 or a school breakfast during which G.B. was given an award for good character in October 2019. Mother stated that she did not attend these functions because they occurred during Father's parenting time and Father attended them.

{¶ 19} Father testified that when Mother lived in Lakewood and was the residential parent for school purposes, although G.B. never had any excessive absences or "tardies" in any particular school year, at "not infrequent times," G.B. would miss school during Mother's parenting time when there did not seem to be a legitimate reason for her to have missed school. Father stated that he had no other concerns or issues regarding Mother's ability to be the residential parent for school purposes when Mother lived in Lakewood.

{¶ 20} With respect to G.B.'s extracurricular activities, Father claimed that while he supported and encouraged G.B.'s participation in extracurricular activities, Mother did not have an interest in them and that even prior to her move to Jefferson often refused to take G.B. to scheduled activities because she was "too busy" or it was "inconvenient" for her to do so. In such cases, Father, his mother or E.H. would take G.B. to, or pick G.B. up, from her activities. Father stated that although Mother had not previously expressed an interest in signing G.B. up for activities, after Mother moved to Jefferson, she signed G.B. up for a number of activities in Jefferson, including a dance class and art classes, that conflicted with activities in which G.B. was already participating in Lakewood.

{¶ 21} Father testified that G.B. currently plays recreational league soccer through the Lakewood Soccer Association and attends an aerial dance class once a week. Father testified that G.B. had played soccer since she was three or four years old and that G.B.'s soccer teammates were her classmates. Father stated that G.B. missed recreation league soccer games in 2021 because Mother did not want to drive her back to Lakewood to attend the games. He stated that G.B. was "rather disappointed at having to miss anything" but that he and Mother ultimately worked out a schedule so that G.B. could play every other game. G.B. ultimately played soccer four weekends, and Mother attended two of her games.

{¶ 22} Father indicated that, in the past, G.B. had also played recreational softball and that she had taken ballet classes for several years but switched to aerial dance after E.H. started teaching aerial dance classes because G.B. "found it more attractive." Father testified that G.B. had expressed an interest in continuing with soccer, pursuing track and field and resuming aerial dance performances in the future.

{¶ 23} Father testified that his "biggest concern" regarding Mother being designated residential parent for school purposes was G.B.'s "feelings on moving" based on her "particular connection to Lakewood." Father stated that G.B. was "very attached to the [Lakewood] school system" and had been "very vocal" for the past two years "about not wanting to have to * * * leave that environment, leave that school system." Father indicated that he believed Mother could meet G.B.'s educational needs but was concerned that if G.B. was "forced into an environment

she didn't want to be in," she would not be "as happy" or "as comfortable" and that her "overall performance" would suffer. Father also claimed that keeping G.B. in Lakewood City Schools was preferable because Jefferson was a slightly "less-rated school system" and did not have the same types of clubs and diversity that Lakewood offers.

{¶ 24} Father claimed that Mother did not take steps to connect with G.B. when G.B. was away from Mother. He testified that although the shared-parenting plan grants each parent "free access" to G.B. for telephone calls during the other's parenting time, Mother rarely called G.B. on the telephone, i.e., "[m]aybe once every other month." G.B. does not have her own cell phone. Mother testified that she did not speak with G.B. often on the telephone because G.B. does not like to talk on the phone. Both parents acknowledged that they do not communicate effectively with one another via telephone and, therefore, communicate primarily via text or email.

{¶ 25} Mother testified that she moved to Jefferson in June 2019 due to her husband's employment with Verizon Wireless. Mother stated that M.T.'s home office is in Girard, Pennsylvania and that he travels regionally in or around Erie, Pennsylvania during the workday. Prior to the move, M.T. had a two-hour commute to work. Mother testified that her family now lives in a large home in a residential community on seven acres where G.B. has her own room and bathroom. Mother stated that although she considered G.B.'s feelings in deciding whether to move, G.B.'s feelings were not controlling; whether the family moved was not G.B.'s decision to make. Mother stated that once she and M.T. decided to move, Mother

took steps to have G.B. see a therapist so she could have someone "unbiased" with whom to talk. Mother stated that she "didn't want [G.B.] to feel put in the middle like it was her choice to make a decision when it wasn't her choice."

{¶ 26} Father testified that after Mother moved to Jefferson, Mother requested that Father find a therapist for G.B. near Lakewood and that he so complied. Both parents testified that G.B. had been seeing the same therapist in Lakewood once or twice a month for the past two years and that G.B.'s anxiety over the parties' custody dispute was the primary reason G.B. had been continuing therapy.

{¶ 27} With respect to G.B.'s extracurricular activities, Mother stated that G.B. "wants to do many different things." Regarding G.B.'s participation in sports, Mother testified that in 2019, Mother brought G.B. back and forth for her softball games in Lakewood and that in 2020, G.B. participated in softball in Lakewood and in Jefferson. Mother stated that she hoped to enroll G.B. in dance classes in Jefferson. Mother acknowledged that, at times, in the past, she had been unwilling to pick G.B. up from her dance classes because it was "inconvenient," i.e., the classes ended at 7 or 8 p.m. and she needed to tend to her other children.

{¶ 28} Mother was concerned about G.B.'s participation in aerial dance activities. Mother testified that, at first, she was supportive of G.B.'s participation in aerial dance because Mother thought it would improve G.B.'s relationship with E.H., who was teaching the aerial dance classes which G.B. attended. However, Mother later came to believe that G.B.'s participation in aerial dance was contrary

to her best interest. Mother expressed concern regarding the outfits G.B. wore when engaging in aerial dance activities and testified that before E.H. opened her own studio, G.B. had attended aerial dance classes at a studio that conducted "pole dancing" classes in an adjacent room at the same time as G.B.'s classes. E.H. testified that the classes were conducted in separate rooms with separate entrances and there was no contact between participants in the two classes.

{¶ 29} Mother also claimed that images of G.B. engaging in aerial dance were posted on the internet and on social media without Mother's consent and that G.B. had participated in evening and private aerial dance performances with E.H. at which Father was not present but for which E.H. was compensated. According to Mother, one of these performances involved G.B. and E.H. "interlocking bodies" during a routine. Mother testified that, at other times, G.B. had performed aerial dance routines involving an apparatus that included a pole and that she had once performed to a song that included references to alcohol which Mother believed was inappropriate for a child of G.B.'s age.

{¶ 30} Father and E.H. denied that the aerial dance performances in which G.B. had engaged were immoral, sexually suggestive or in any way inappropriate for a child her age. Father testified that he was supportive of all of the performances in which G.B. had participated and that he had no objection to E.H.'s use of G.B.'s image in her commercial activities.[1]

---

[1] Although Mother objected to E.H.'s posting of G.B.'s images on the internet, Mother admitted that she had previously posted videos of G.B. on her own public, monetized YouTube Channel, which she claimed was "geared towards children."

{¶ 31} Mother testified that she was concerned that E.H. was "replacing [her] as mother" and was concerned about G.B. being in the care of E.H. when Father was working nights and weekends because Mother did not "trust her judgment." Mother stated that in January 2019, E.H. dyed G.B.'s hair blue in violation of the school dress code that prohibited "unnatural" hair color. Father testified that he did not have an issue with the hair dye, that it was temporary and washed out within a few days, that E.H. had added streaks of color to G.B.'s hair on several prior occasions without objection by Mother and that the school policy was not enforced because it was "very common" for children in the elementary school or middle school to have colored hair. Father stated that he would allow G.B. to color her hair again "[i]f that's what [G.B.] wants." Mother stated that Father told her if she had an issue with it, "to go file a motion in Court." Mother testified that, in her view, Father is, at times, too deferential to G.B. and that "with children you kinda have to set some boundaries and stand firm." She also stated that "on moral things" she is "more conservative" than Father.

{¶ 32} Disputes also arose between the parties regarding requested adjustments to the parenting-time schedule. Mother testified that when she lived in Lakewood, the parties did not strictly follow the parenting-time schedule in the shared-parenting plan and that she would often accommodate Father's requests for additional parenting time with G.B. However, Mother claimed that after she moved to Jefferson, Father had often refused to accommodate her requests for adjustments to the parenting-time schedule. One such incident occurred in November 2019,

which resulted in Mother calling the police. Mother testified that in August 2019, she had requested that Father allow her "vacation time" with G.B. over the Thanksgiving holiday so that G.B. could visit with her grandparents who would be coming in from out of town. Mother claimed that, although the shared-parenting plan specified that Father was to have parenting time with G.B. on Thanksgiving and the following weekend, Father had agreed that Mother could have parenting time with G.B. that weekend. When Mother went to pick G.B. up the day after Thanksgiving, however, Father refused to allow Mother to take G.B. Mother testified that she was "distraught" and "didn't know what else to do," so she called the police. Father claimed that he also had family coming in from out of town that weekend and had, therefore, made "multiple offers" to Mother "to split the time" so that G.B. could spend time with both families that week. Father stated that when Mother rejected his offers of compromise, he refused to give up any of his scheduled parenting-time. Father testified what when Mother showed up at his door and told him she was taking G.B., Father told her G.B. was not going with her. The police refused to get involved in the parties' dispute and told Mother to leave the property.

{¶ 33} Mother testified that she had had multiple conversations with G.B. regarding G.B.'s desire to continue attending school in Lakewood and G.B.'s reasons for wishing to do so. Mother acknowledged that G.B. could have some difficulties making the transition to a new school, making new friends and adjusting to new sports teams in Jefferson but that she believed G.B. could do so successfully with the proper support, including continuing to see her therapist. Mother indicated that she

had also tried to get G.B. involved in some activities in the Jefferson community so that she could meet people.

{¶ 34} Mother asserted that she should be designated the residential parent for school purposes because she was a stay-at-home mother while Father worked nights and every other weekend and because she believed G.B.'s "well-being and her morals and what she's taught and her boundaries will be different and better" if G.B. spent more time with Mother. Mother stated that if she were designated the residential parent for school purposes, she would be "flexible with [G.B.] seeing her dad" and would be willing to accommodate Father's requests for additional parenting time beyond what was provided for in the modified shared-parenting plan.

{¶ 35} Mother testified that she believed her relationship with G.B. had become "strain[ed]" since Father was designated the temporary residential parent for school purposes because she does not see G.B. as much as she used to and because Father "doesn't agree with me and does what he wants and I'm left out of the decision-making." Mother stated that she believed Father "manipulates [G.B.] to feel a certain way," that Mother was "starting to not trust" Father and that Mother believed Father and E.H. were "keeping things" from her. For example, Mother claimed that she was unaware that G.B. was still attending aerial dance classes. Father denied withholding any information about G.B. from Mother.

{¶ 36} After the parties presented their evidence, the juvenile court heard from the guardian ad litem. The guardian ad litem stated she "maintained" her

recommendation as stated in her February 26, 2020 written report, i.e., that she believed it was in G.B.'s best interest for her to be in the "care and control of her mother" and that Mother be designated the residential parent for school purposes. The guardian ad litem indicated that she made that recommendation, notwithstanding that G.B. had "not wavered" from her desire to remain in Lakewood City Schools and notwithstanding that G.B. had been diagnosed with anxiety and had been seeing a therapist. The guardian ad litem indicated that G.B. is "a pleaser," that "she doesn't want anyone to be upset with her" and that she has "lots of anxiety" over "these issues." The guardian ad litem indicated that most of G.B.'s therapy sessions "center on school" and that G.B. was being treated with "soft therapy" in an attempt to develop coping skills to better "deal with the situation."

{¶ 37} The guardian ad litem stated that G.B. was an "excellent student academically," that she had no special needs and that she did not see any barriers to G.B.'s academic success in whatever school district she attended. She noted that G.B. is friendly, but "more introverted," and has a small group of friends. She indicated that G.B. "didn't have any adverse reaction to being questioned about a change in school district" but that her "comfort" was in Lakewood City Schools "because that's what she knows." The guardian ad litem stated that she believed it would "benefit" G.B. for her "to know that she'll be successful wherever she goes."

{¶ 38} The guardian ad litem indicated that the primary basis for her recommendation was her concern regarding G.B.'s relationship with Mother. She stated that she believed G.B.'s relationship with Mother had "deteriorated," that

there was "some estrangement from not being together" and that she believed it was "very valuable to have a positive relationship with one's mother."

{¶ 39} The guardian ad litem indicated that Mother and her family moved for "a good reason" to "enhance their lifestyle" and "afford all of the children a more positive childhood experience," that Mother is currently a stay-at-home parent with no plans to return to full-time employment for at least another three or four years and that Mother lives in a "lovely home" in a residential community.

{¶ 40} The guardian ad litem reported that she does not "have any issue with either parent as a parent." She indicated that "[t]here are so many positives here," i.e., both parents are "competent parents," both parents will be able to meet G.B.'s educational, health care and mental health needs and G.B. has positive relationships with her stepparents and her siblings. The guardian ad litem stated, however, that in her view, when Father was named the temporary residential parent for school purposes, "he wasn't as flexible as he could be" and that when Mother was the residential parent for school purposes, she was "very flexible." She noted that Father "wants to please his daughter" and do what she wants, but that "this isn't a child's issue"; "[t]his is a parents' issue."

{¶ 41} The guardian ad litem stated that she had last spoken with G.B. in January 2020 — nearly 18 months before the hearing — and could not recall when she had last spoken with Mother or Father. The guardian ad litem reported that she had last spoken with G.B.'s therapist on June 2, 2021. The guardian ad litem stated

that she was not concerned by her lack of recent contact with the parents or G.B. because she had learned, in talking with G.B.'s therapist, that nothing had changed.

{¶ 42} The guardian ad litem indicated that she did not believe G.B. attending school in Jefferson would negatively impact her relationship with Father because she would have regular access to and visitation with Father and is "very well bonded * * * and connected to her father." The guardian ad litem stated that Father had had more involvement with G.B.'s therapist and school, particularly in the past two years.

{¶ 43} The guardian ad litem acknowledged that there were communication issues between Mother and Father and that, in her view, Father "had the power position and stood on that power position" in communicating with Mother. She stated that she would not characterize Father as "bullying" Mother but indicated that she believes Father is a "dominant parent" and that the dynamic changed for the family when Father was designated the temporary residential parent for school purposes. She stated that although both parents are "well-intentioned," they "lack insight as to the dynamics that [have] been created and the effected influence it has had on their daughter."

{¶ 44} The guardian ad litem recommended that shared parenting be maintained and that the parents have equal parenting responsibility because they are both competent and intelligent, are supportive of G.B. and want what is best for her and it would benefit G.B. to have her parents maintained as equal to one another.

**The Juvenile Court's Decision**

{¶ 45} On July 26, 2021, the juvenile court issued its decision. The juvenile court found that there was no change in circumstances in the child or parents that warranted a modification of the shared-parenting plan as it related to the designation of the residential parent for school purposes but found that there was a change of circumstances that warranted modification of the shared-parenting plan as it relates to parenting time. The juvenile court stated:

> The Court **does not find** that based on the facts that were known to the Court at the time of the prior decree, that a change in circumstances has occurred in the child or for either of the parents subject to a parenting decree, and that **a modification of the residential parent for school purposes is necessary** to serve the best interests of the child.

> The Court **does find** that based on facts have arisen since the prior decree, that a change in circumstances has occurred in the child and the parents subject to a parenting decree, and that **a modification of the parenting plan as it relates to parenting time is necessary** to serve the best interests of the child.

(Emphasis sic.)

{¶ 46} The juvenile court denied Mother's motion to be designated sole residential parent and legal custodian and granted the parties' motions to modify the shared-parenting plan, in part. The juvenile court continued the designation of Mother as the residential parent for school purposes and modified the parenting-time schedule, granting Father parenting time on alternate weekends that coincided with Father's work schedule during the school year. The juvenile court also set forth a detailed holiday and vacation parenting-time schedule. The juvenile court found

that the remaining provisions of the original shared-parenting plan were "appropriate and in the best interest of the child."

{¶ 47} Father appealed, raising the following four assignments of error for review:

First Assignment of Error: The trial court abused its discretion when it found that no change in circumstances has occurred in the child for purposes of finding that Mother should be designated the residential parent for school purposes because the court's decision was not supported by a substantial amount of credible and competent evidence.

Second Assignment of Error: The trial court abused its discretion by designating Mother as the residential parent for school purposes because the court's decision was not supported by a substantial amount of credible and competent evidence.

Third Assignment of Error: The trial court abused its discretion when it found that a change of circumstances has occurred and that a modification of the parenting [plan] as it relates to parenting time is necessary to serve the best interests of the child without making a finding that the harm likely to be caused by changing the child's environment is outweighed by the benefits of the change, as required by R.C. 3109.04(E)(1)(a).

Fourth Assignment of Error: The trial court abused its discretion by failing to consider the wishes of the child as it relates to allocation of parental rights and responsibilities, and specifically, the designation of residential parent for school purposes, as required by R.C. 3109.04(F)(1)(b).

{¶ 48} Father's assignments of error are interrelated. For ease of discussion, we address his assignment of error out of order and together where appropriate.

**Law and Analysis**

**Modification of Shared-Parenting Plan**

**{¶ 49}** R.C. 3109.04(E) governs the modification of shared-parenting plans and decrees. R.C. 3109.04(E)(1)(a) provides, in relevant part:

(a) *The court shall not modify a prior decree allocating parental rights and responsibilitie*s for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

(Emphasis added.)

**{¶ 50}** R.C. 3109.04(E)(2)(b) provides:

In addition to a modification authorized under division (E)(1) of this section: * * *

> (b) *The court may modify the terms of the plan for shared parenting* approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be

made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

(Emphasis added.)

{¶ 51} In his first and third assignments of error, Father contends that the juvenile court failed to properly apply R.C. 3109.04(E)(1)(a). Specifically, in his first assignment of error, Father argues that the juvenile court abused its discretion in determining that there was "no change in circumstances" as it related to the designation of the residential parent for school purposes. He asserts that the juvenile court's order is contradictory on its face and that "it goes against common sense and logic" for the court to find no change in circumstances in one part of its order and the existence of a change in circumstances in another part of its order. He further argues that substantial, competent and credible evidence of eight "generally uncontroverted facts"[2] demonstrates that a change in circumstances occurred for G.B. and her parents since the date of the original shared-parenting decree and that the juvenile court abused its discretion in "ignoring" those facts when reaching its decision.

_____

[2] According to Father, these eight facts are: (1) at the time of the prior order G.B. was two years old and not yet in school; while, at the time of the hearing, G.B. was 13 and had just completed the seventh grade; (2) since the time of the prior order, both parents had gotten married and had children with their respective spouses; (3) the child's relationship with Mother had become "strained" in "recent years"; (4) G.B. is now engaged in multiple extracurricular activities; (5) Mother's relocation to Jefferson "rendered many components of the prior order either impossible or untenable and unsustainable"; (6) Mother did not attend school functions for G.B.; (7) G.B. has required mental health treatment and (8) throughout the post-decree litigation, G.B.'s wishes to live with Father and continue attending school in Lakewood have remained consistent.

{¶ 52} In his third assignment of error, Father argues that the juvenile court abused its discretion in designating Mother as residential parent for school purposes and modifying the parenting-time schedule without making a finding under R.C. 3109.04(E)(1)(a)(iii) that "the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment" to G.B.

{¶ 53} The question of whether a trial court correctly interpreted and applied a statute is a question of law that we review de novo. *See, e.g., State v. Asadi-Ousley*, 8th Dist. Cuyahoga Nos. 104714 and 105103, 2017-Ohio-937, ¶ 13; *Jones v. N&S Auto Sales, Inc.*, 8th Dist. Cuyahoga No. 99172, 2013-Ohio-2468, ¶ 13; *see also Myers v. Wade*, 10th Dist. Franklin No. 16AP-667, 2017-Ohio-8833, ¶ 8.

{¶ 54} R.C. 3109.04(E)(1)(a) and 3109.04(E)(2)(b) provide "significantly different standards for modification." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 56, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 32. R.C. 3109.04(E)(1)(a) provides for modification of "a prior *decree* allocating parental rights and responsibilities for the care of children," including a shared-parenting decree. (Emphasis added.) "'Typically, this arises when a parent wishes to change legal custody or become the sole residential parent and legal custodian rather than sharing custody.'" *In re F.T.*, 2020-Ohio-1624, 154 N.E.3d 245, ¶ 52 (8th Dist.), quoting *Gessner v. Gessner*, 2d Dist. Miami No. 2017-CA-6, 2017-Ohio-7514, ¶ 36. Under R.C. 3109.04(E)(1)(a), a court may change the residential parent designated by a prior decree only if it finds (1) a change in circumstances of the child or one or both parents, (2) the modification is in the best interest of the child and (3) that one of three additional

factors specified in R.C. 3109.04(E)(1)(a)(i)-(iii) applies.  As the court explained in

*Fisher*, the General Assembly intended the standard under R.C. 3109.04(E)(1)(a) to

be a "high standard" because it was attempting to """spare children from a constant

tug of war between their parents who would file a motion for change of custody each

time the parent out of custody thought he or she could provide the child a "'better'"

environment.'"" *Fisher* at ¶ 33-34, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415,

418, 674 N.E.2d 1159 (1997), quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445

N.E.2d 1153 (10th Dist.1982).

{¶ 55} R.C. 3109.04(E)(2)(b), on the other hand, provides for the

modification of *the terms* of a shared-parenting *plan*.  Under R.C. 3109.04(E)(2)(b),

the court — on its own initiative or at the request of one or both parents — may

modify the terms of a shared-parenting plan previously approved by the court and

incorporated into the shared-parenting decree where the modification is in the

child's best interest.  Thus, to modify the terms of a shared-parenting plan under

R.C. 3109.04(E)(2)(b), the court need only find that the modification is in the best

interest of the child; no finding of a change in circumstances is required.

{¶ 56} In *Fisher*, the Ohio Supreme Court explained the distinction between

a shared-parenting "plan" and a shared-parenting "decree" as those terms are used

in R.C. 3109.04, as follows:

> Within the custody statute, a "plan" is statutorily different from a
> "decree" or an "order."  A shared-parenting order is issued by a court
> when it allocates the parental rights and responsibilities for a child.
> R.C. 3109.04(A)(2). Similarly, a shared-parenting decree grants the
> parents shared parenting of a child. R.C. 3109.04(D)(1)(d).  An order

or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.

However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

*Fisher* at ¶ 29-30. The court further explained:

The standard in R.C. 3109.04(E)(2)(b) for modification of a shared-parenting plan is lower because the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian. The individual or individuals designated the residential parent and legal custodian of a child will have far greater influence over the child's life than decisions as to which school the child will attend or the physical location of the child during holidays. Further, factors such as the physical location of a child during a particular weekend or holiday or provisions of a child's medical care are more likely to require change over time than the status of the child's residential parent and legal custodian.

*Id.* at ¶ 36; *see also Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, ¶ 11 ("R.C. 3109.04(E)(1)(a) allows for modification of a shared-parenting decree. R.C. 3109.04(E)(2)(a) and (b) allow for the modification of the terms of a shared-parenting plan") (emphasis deleted).

{¶ 57} Father argues that the "higher standard" reserved for modification of a prior decree allocating parental rights and responsibilities under R.C. 3109.04(E)(1)(a) should apply here because this case "involves the relocation of one parent to a community more than 60 miles away," rather than to a "neighboring

town or district," and because G.B. is a teenager with "significant connection[s] to her school and community."

{¶ 58} However, this court has held that where the trial court only modifies parenting time and the designation of the residential parent for school purposes, the "lower standard" under R.C. 3109.04(E)(2)(b) applies, i.e., the trial court need only find that the modification is in the best interest of the child. *See, e.g., In re F.T.*, 2020-Ohio-1624, 154 N.E.3d 245, at ¶ 58-59; *In re E.B.*, 2020-Ohio-4139, 157 N.E.3d 826, ¶ 74-76 (8th Dist.); *In re A.Z.*, 8th Dist. Cuyahoga No. 108627, 2020-Ohio-2941, ¶ 47; *see also Marimon v. Marimon*, 1st Dist. Hamilton No. C-210137, 2021-Ohio-3437, ¶ 15-16 (where trial court's decision only modified the designation of the residential parent for school purposes, it did not involve a modification of an "order" or "decree" of the allocation of parental rights; therefore, trial court's decision granting motion to modify the terms of the shared-parenting plan to change the residential parent for school purposes was governed by R.C. 3109.04(E)(2)(b)); *Fritsch v. Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, ¶ 20-21 (trial court properly applied the best interest of the child standard in R.C. 3109.04(E)(2)(b) to modify the designation of the residential parent for school purposes); *Palichat v. Palichat*, 2d Dist. Greene No. 2015-CA-42, 2019-Ohio-1379 135 N.E.3d 389, ¶ 14 ("[P]arenting time, child support, and the designation of residential parent for school purposes have all been held to be terms of a shared parenting plan that only require a 'best interest' evaluation for modification."), *Gessner*, 2017-Ohio-7514, at ¶ 35 (modification of parenting time should be

evaluated under R.C. 3109.04(E)(2)(b)); *Ralston v. Ralston*, 3d Dist. Marion No. 9-08-30, 2009-Ohio-679, ¶ 17 (where trial court retained both parents as residential parents and only modified the designation of residential parent for school purposes, trial court was required to apply R.C. 3109.04(E)(2)(b) rather than R.C. 3109.04(E)(1)(a)); *Hall v. Hall*, 4th Dist. Adams No. 16CA1030, 2017-Ohio-8968, ¶ 26-27, 29 (modification of parenting-time schedule was governed by best interest standard in R.C. 3109.04(E)(2)(b)); *Myers*, 2017-Ohio-8833, at ¶ 12-13 (designation of residential parent for school purposes and amount of parenting time involved modifications to shared-parenting plan governed by R.C. 3109.04(E)(2) not 3109.04(E)(1)(a)); *In re O.M.R.*, 11th Dist. Trumbull No. 2013-T-0057, 2014-Ohio-4739, ¶ 9 ("R.C. 3109.04(E)(2)(b) controls modifications of a shared parenting plan that change or designate a residential parent for school purposes."); *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 42-45 (juvenile court did not err when it applied R.C. 3109.04(E)(2)(b) to change the designation of residential parent for school purposes in the shared-parenting plan from Mother to Father after finding that the modification was in the child's best interest and without finding a change in circumstances of the child or either parent). *But see Herron v. Herron*, 9th Dist. Summit No. 29683, 2021-Ohio-2223, ¶ 9 ("motion to modify parenting time under a shared parenting plan is reviewed under R.C. 3109.04(E)(1)(a) because the motion seeks to reallocate the parental rights and responsibilities set forth in a prior decree").

{¶ 59} Indeed, it was the shared-parenting *plan* that included the provision that led to the filing of the motions in this case. The parties' shared-parenting plan stated, in relevant part:

> The Shared Parenting Plan shall further resolve the residential status of the minor child and it is agreed that Mother is the residential parent for school purposes, only, and both the mother and father are the residential parents for all other purposes. If mother moves from Lakewood, OH then if the parties can't agree they will file a motion to determine residential parent for school purposes, only.

{¶ 60} In this case, by designating Mother as the residential parent for school purposes and modifying the parenting-time schedule, the juvenile court merely modified terms of the parties' shared-parenting plan that had been incorporated into the shared-parenting decree. There is no language in the juvenile court's July 26, 2021 order to suggest the court modified the decree's allocation of shared parental rights and responsibilities. Under the juvenile court's July 26, 2021 order, both parents were still designated as residential parents and legal custodians of G.B. Accordingly, R.C. 3109.04(E)(1)(a) does not apply, and the juvenile court was not required to find a change in circumstances of the child or either parent or that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to G.B. Rather, the "lower standard" under R.C. 3109.04(E)(2)(b) applied, and the juvenile court only had to determine what was in the best interest of G.B. *See, e.g., In re E.B.*, 2020-Ohio-4139, 157 N.E.3d 826, at ¶ 74-76; *see also In re E.L.C.*, 2015-Ohio-2220, at ¶ 42-45 (R.C. 3109.04(E)(2)(b) permitted court to modify terms of shared-parenting plan without

having to find a change in circumstances of the child or either parent even though, as a result of the modification of the terms of the shared-parenting plan, the child would no longer "reside primarily with Mother," as provided for in the parties' original shared-parenting plan).

{¶ 61} Father's first and third assignments of error are overruled.

**Best Interest of the Child**

{¶ 62} In his second and fourth assignments of error, Father argues that the juvenile court abused its discretion in determining that it was in G.B.'s best interest to designate Mother the residential parent for school purposes. In his second assignment of error, Father contends that there is no "substantial amount of credible and competent evidence" in the record to support the juvenile court's decision that it was in G.B.'s best interest to designate Mother the residential parent for school purposes. In his fourth assignment of error, Father contends that the juvenile court abused its discretion because it failed to consider G.B.'s wishes in determining what was in her best interest as required under R.C. 3109.04(F)(1)(b).

{¶ 63} R.C. 3109.04(F)(1) provides:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as

to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared-parenting decree has continuously and willfully denied the

other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.[3]

{¶ 64} Decisions in child custody matters are among "the most difficult and agonizing decisions a trial judge must make." *Davis*, 77 Ohio St.3d at 418, 674 N.E.2d 1159. Trial courts have "wide latitude" in their consideration of the evidence when making such decisions. *Id.* at 418. Accordingly, we review a trial court's decision in a child custody matter, including whether it is in a child's best interest to modify a shared-parenting plan, for abuse of discretion. *See, e.g., Perrin v. Perrin*, 8th Dist. Cuyahoga No. 109376, 2021-Ohio-2581, ¶ 34; *In re E.O.T.,* 8th Dist. Cuyahoga No. 107328, 2019-Ohio-352, ¶ 39; *In re E.B.*, 2020-Ohio-4139, 157 N.E.3d 826, at ¶ 78; *see also Hall*, 2017-Ohio-8968, at ¶ 19.

{¶ 65} A trial court abuses its discretion when its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450

---

[3] Although R.C. 3109.04(F)(1), by its terms, applies to the modification of "decrees," this court and others have also applied it to considerations of whether the modification of a shared-parenting plan is in a child's best interest. *See, e.g.*, *In re F.T.*, 2020-Ohio-1624, 154 N.E.3d 245, at ¶ 59-60; *In re E.B.*, 2020-Ohio-4139, 157 N.E.3d 826, at ¶ 76-78; *Hall,* 2017-Ohio-8968, at ¶ 32; *Wilcox v. Iiams*, 3d Dist. Logan No. 8-18-64, 2019-Ohio-3030, ¶ 18-19, 22, 24. *But see Marimon*, 2021-Ohio-3437, at ¶ 22 ("[N]othing in R.C. 3109.04(E)(2)(b) explicitly requires the trial court to examine the factors in R.C. 3109.04(F)(1), and R.C. 3109.04(F)(1) by its terms applies to 'an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities'— not modifications of terms of the shared-parenting plan. * * * Therefore, although the trial court was required to consider the children's best interest in modifying the terms of the shared-parenting plan with regard to school placement, the trial court was not required to specifically consider the factors enumerated in R.C. 3109.04(F)(1).").

N.E.2d 1140 (1983). A decision is unreasonable when "no sound reasoning process" supports that decision. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Mayer v. Mayer*, 8th Dist. Cuyahoga No. 109103, 2020-Ohio-4993, ¶ 8, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

### Consideration of G.B.'s Wishes

{¶ 66} With respect to G.B.'s wishes, Father criticizes the juvenile court because (1) it failed to set forth specific findings of fact with respect to G.B.'s wishes in its July 26, 2021 judgment entry and (2) did not expressly state, in its July 26, 2021 judgment entry, that it considered G.B.'s wishes "regarding which parent should be designated the residential parent for school purposes" and instead stated only that it considered "[t]he child's wishes as to parenting time by the parent who is not the residential parent for school purposes."

{¶ 67} Although a trial court is required to consider all of the relevant factors in determining what is in a child's best interest, it is not necessary that the juvenile court set forth its analysis of each such factor in its judgment entry. *See, e.g., In re E.O.T.*, 2019-Ohio-352, at ¶ 45; *see also Hall*, 2017-Ohio-8968, at ¶ 33 ("A trial court is not required to provide a detailed analysis of the child's best interest before modifying the terms of a shared parenting plan. * * * Rather, 'a trial court substantially complies with R.C. 3109.04(E)(2)(b) if its reasons for modifying the

terms of a shared parenting plan are apparent from the record; i.e., if it is apparent from the record that the modification is in the child's best interest.'"), quoting *Bishop v. Bishop*, 4th Dist. Washington No. 08CA44, 2009-Ohio-4537, ¶ 38; *Giovanini v. Bailey*, 9th Dist. Summit No. 28631, 2018-Ohio-369, ¶ 13 ("A trial court is not required to explicitly make findings of fact as to the factors under R.C. 3109.04(F)(1). * * * 'Instead, it must be apparent from the record that the trial court considered the best interest factors in its decision.'"), quoting *Phillips v. Phillips*, 9th Dist. Lorain No. 13CA010358, 2014-Ohio-248, ¶ 8; *Brandt v. Brandt*, 11th Dist. Geauga No. 2012-G-3064, 2012-Ohio-5932, ¶ 13 ("Though there should be some indication in the judgment entry that the trial court considered the best interests of the child pursuant to R.C. 3109.04(F), there is no requirement it make specific findings in its entry as to each and every factor.").[4]

---

[4] This is particularly so where, as here, the factor at issue involves consideration of a child's wishes as revealed during an in camera interview with the juvenile court, which is generally considered confidential. *See, e.g., In re T.B.-G.*, 8th Dist. Cuyahoga No. 106713, 2018-Ohio-4116, ¶ 4; *In re A.K.*, 2d Dist. Champaign No. 2013-CA-63, 2015-Ohio-29, ¶ 39, fn. 4; *Lawson v. Lawson*, 5th Dist. Licking No. 13-CA-8, 2013-Ohio-4687, ¶ 56; *see also In re T.M.M.*, 2017-Ohio-9219, 102 N.E.3d 558, ¶ 24-28 (7th Dist.) (magistrate did not abuse discretion in failing to detail what was learned from child during in camera interview other than his preference that he remain living with his mother under the current arrangement; "a trial court is not required to issue findings of fact pertaining to an in camera interview unless the court decides not to determine the child's wishes and concerns"); *Stevenson v. Kotnick*, 11th Dist. Lake No. 2010-L-063, 2011-Ohio-2585, ¶ 27 (declining to disclose the details of child's statements made during in camera interview because '"[i]n a custody dispute, the best interest of the child is cardinal. R.C. 3109.04(B)(2)(c) makes clear the legislative intent to provide an in camera atmosphere free of influence, pressure and anxiety so that, if appropriate, a child can participate in the determination of his or her custody. * * * If a child believes that every word he or she speaks to the judge may later be read by his or her parents, the child may withhold information and the court's decision-making process may thereby be compromised.'"), quoting *Chapman v. Chapman*, 2d Dist. Montgomery No. 21652, 2007-Ohio-2968, ¶ 28; *cf. Myers v. Myers*, 170 Ohio App.3d 436, 2007-Ohio-66, 867 N.E.2d 848, ¶ 50 (5th Dist.)

{¶ 68} In this case, the juvenile court conducted an in camera interview of G.B. — the transcript of which we have carefully reviewed. During that in camera interview, G.B. clearly communicated her preferences to the juvenile court and discussed the reasons for those preferences with the juvenile court. The juvenile court expressly referenced that in camera interview in its July 26, 2021 judgment entry. The juvenile court also expressly set forth, in its judgment entry, its determination that "the child has sufficient reasoning ability to express her wishes and concerns with respect to the allocation of parental rights and responsibilities." In addition, the juvenile court heard from the guardian ad litem regarding G.B.'s wishes as set forth in the guardian ad litem's written report and the guardian ad litem's statements at the hearing. Accordingly, the record reflects that the juvenile court properly considered G.B.'s wishes in determining what was in G.B.'s best interest.

### Designation of Mother as Residential Parent for School Purposes and Modification of Parenting Time

{¶ 69} Father also contends that the juvenile court's decision should be reversed because the only evidence in the record that supports Mother's designation as the residential parent for school purposes is Mother's "stated opinions regarding

---

(observing that the process of recording an in camera interview and sealing the transcript "allows appellate courts to review the in-camera interview proceedings and ascertain the reasonableness of same, while still allowing for the child to 'feel safe and comfortable in expressing his or her opinions honestly and openly, without subjecting the child to any additional psychological trauma or loyalty conflicts'"), quoting Barbara L. House, *Considering the Child's Preference in Determining Custody: Is It Really in the Child's Best Interest?*, 19 J.Juv.L. 176 186 (1998).

the morality of [Father's] household" and "the generally unsupported recommendations of the [g]uardian ad [l]item." Specifically, Father argues that (1) Mother's testimony regarding the sexually suggestive nature of aerial dance and her other morality-based concerns was not credible and was contradictory, (2) the GAL's recommendation was "rooted in gender bias" in favor of Mother, and should not be given weight because the GAL offered "no substantive basis for her opinion" that Mother should be designated the residential parent for school purposes, (3) G.B.'s anxiety could be "exacerbated" if she were to relocate to Jefferson and (4) Father should have been designated the residential parent for school purposes because he was the "more involved" parent and G.B. had thrived under his care while attending school in Lakewood.

{¶ 70} As stated above, our role in reviewing the juvenile court's decision is to determine whether the juvenile court's decision constitutes an abuse of discretion. Abuse of discretion is "a very high standard." *Supportive Solutions Training Academy, L.L.C., v. Electronic Classroom of Tomorrow*, 8th Dist. Cuyahoga Nos. 95022 and 95287, 2013-Ohio-3910, ¶ 11. In determining whether the juvenile court abused its discretion, we cannot substitute our judgment for that of the trial court. *See, e.g., Davis*, 77 Ohio St.3d at 418, 674 N.E.2d 1159; *Kontra v. Kontra*, 8th Dist. Cuyahoga No. 98126, 2012-Ohio-4293, ¶ 13.

{¶ 71} Following careful review and consideration of the record in this case, we cannot say that the juvenile court abused its discretion in designating Mother as

the residential parent for school purposes and in modifying the parenting-time schedule to accommodate G.B. attending school in Jefferson.

{¶ 72} In its July 26, 2021 judgment entry, the juvenile court identified the specific factors it considered, along with the evidence and testimony of the witnesses at the hearing, its in camera interview of G.B. and the recommendation of the guardian ad litem, in determining what was in G.B.'s best interest as follows:

> The prior intersection and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
> The geographical location of the residence of each parent and the distance between those residences; the current regional distance between the homes;
> The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedules;
> The age of the child;
> The child's adjustment to home, school, and community;
>
> * * *
> The child's wishes as to parenting time by the parent who is not the residential parent for school purposes;
> The health and safety of the child;
> The amount of time that will be available for the child to spend with siblings;
> Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
> Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the Court;
> Whether either parent has established a residence or is planning to establish a residence outside this state;
> The wishes and concerns of the Child's parents, as expressed by them to the Court; [and]

The ability of the parents to cooperate and make decisions jointly, with respect to the child[;] the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; the history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; the geographic proximity of the parents to each other, as the proximity relates to practical considerations of shared parenting[.]

{¶ 73} Thus, the judgment entry makes it clear that the juvenile court considered the relevant facts of this case in determining that the designation of Mother as the residential parent for school purposes was in G.B.'s best interest. The record further reflects that the juvenile court did not make that decision lightly. Shortly after the parties filed their motions, the juvenile court entered an order designating Father as the temporary residential parent for school purposes, maintaining the status quo and prohibiting G.B. from being enrolled in a new school district until all the evidence could be presented to, and heard in full by, the juvenile court.

{¶ 74} At the time of the hearing, G.B. was 13 years old and a rising eighth grader. Although the juvenile court was required to consider G.B.'s wishes in determining what was in her best interest, her wishes were not controlling and the juvenile court was not required to weigh G.B.'s wishes more heavily than other relevant factors in determining what was in her best interest. *See, e.g., Tomaszewski v. Tomaszewski*, 8th Dist. Cuyahoga No. 86976, 2006-Ohio-3357, ¶ 16; *Kellogg v. Kellogg*, 10th Dist. Franklin No. 04AP-382, 2004-Ohio-7202, ¶ 19; *In re R.L.S.*, 12th Dist. Warren No. CA2013-12-117, 2014-Ohio-3294, ¶ 32; *see also Bates v. Bates*, 11th Dist. Ashtabula No. 2000-A-0058, 2001 Ohio App. LEXIS 5428, 9 (Dec. 7, 2001)

(In a child custody dispute, "[a] child's stated preference is not controlling and should not be the only factor upon which a trial court bases its decision.").

{¶ 75} Further, the record reflects that G.B.'s wish that Father be designated the residential parent for school purposes was not based primarily on a preference to live with Father over Mother, but rather, was based on a desire to keep attending school in Lakewood and to maintain ties with her close-knit friend group. In other words, if Mother had been the parent still living in Lakewood, G.B. would have wanted Mother to be designated the residential parent for school purposes instead of Father. While we recognize the importance of such matters to teens, the juvenile court was not required favor G.B.'s preference to continue attending school with her friends in Lakewood over other relevant factors.

{¶ 76} Although a change in school districts might result in increased anxiety for G.B. — at least on a temporary basis — there is nothing in the record to indicate that that risk outweighed the potential benefits of designating Mother as the residential parent for school purposes. G.B. was seeing a therapist to assist her to develop coping skills, and both parties testified that they were supportive of her continuing in therapy. There was no dispute that G.B. is an exceptional student and was likely to be academically successful in any school district in which she was enrolled. Although G.B. had applied for and been accepted into College Credit Plus program at Cuyahoga Community College when attending school in Lakewood, there was no reason to believe that she could not also participate in that statewide program through another college when attending school in Jefferson.

{¶ 77} This is not an easy case. The record reflects that G.B. has two competent, caring parents who love her and want what is best for her. On each side, G.B. also has stepparents and siblings with whom she has a strong bond. It is apparent from the record that both Mother and Father have been actively involved in parenting G.B. and that both Mother and Father are committed to continuing to actively parent G.B. Although the parties spent a significant amount of time at the hearing arguing over the morality or immorality of aerial dance and the extent to which G.B. should be permitted to continue participating in that activity, there is nothing in the record to indicate that the juvenile court's decision was based on considerations of morality or G.B.'s participation in aerial dance. The record reflected that G.B.'s relationship with Mother had deteriorated since Mother had moved to Jefferson. Father readily acknowledged this fact, identifying G.B.'s "strained" relationship with Mother as one of eight "uncontroverted facts." The record further reflects that, due to Father's work schedule as a paramedic, a significant amount of the time G.B. spent with Father during the week was spent in the care of her stepmother, rather than with Father.

{¶ 78} The record supports the juvenile court's determination that it was in G.B.'s best interest to designate Mother as the residential parent for school purposes and to modify the parenting-time schedule to reflect the distance between the parents' residences. There is nothing in the record to suggest that the juvenile court acted unreasonably, arbitrarily or unconscionably in reaching its decision. The

parenting-time schedule established by the juvenile court is reasonable and allows each parent to spend substantial, meaningful time with G.B.

**{¶ 79}** Accordingly, Father's second and fourth assignments of error are overruled.

**{¶ 80}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR